UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel William Petersen,

Plaintiff,

v.

E.F. Johnson Company and
Transcrypt International, Inc.,

Defendants.

Civ. File No. 02-333 (PAM/RLE)

**MEMORANDUM AND ORDER FOR JUDGMENT**

---

This matter was tried to the Court during the week of November 4, 2002. Plaintiff claims that he suffered extensive financial loss as a result of Defendants' interpretation of his severance benefits policy. For the reasons that follow, the Court determines that Plaintiff is not entitled to benefits under the disputed pension program. Accordingly, the Court rules in favor of Defendants in part and in favor of Plaintiff in part.

## BACKGROUND

Defendants E.F. Johnson Company and Transcrypt International, Inc. ("E.F. Johnson") hired Petersen as Director of Information Systems on May 22, 2000. In response to an economic downturn, E.F. Johnson laid off[1] some of its work force, including Petersen

---

[1] The Court recognizes that using the term "layoff" risks mischaracterizing the employment actions of E.F. Johnson. Because the nature of those actions and the meanings of the terms "layoff," "temporary layoff," "permanent layoff," and "termination without cause" form the very subject of this litigation, the Court does not mean to stake a position simply in its preference for one term over another. While the Court does not employ the terms interchangeably, the Court also does not give them any force beyond their broadest connotations.

FILED DEC 27 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 27 2002
DEPUTY CLERK

on March 9, 2001. E.F. Johnson permanently terminated the employment of a second group of employees on that same date, but claims that it anticipated rehiring some or all of the laid-off employees from the first group.

At the time of the layoff, Petersen was subject to the terms of The Directors Incentive Compensation Program ("the Program"). E.F. Johnson adopted a new severance package in April 2001, one month after it laid off Petersen. Six months later, on September 9, 2001, E.F. Johnson automatically terminated Petersen's employment, along with the other employees it had placed on temporary layoff status. However, when E.F. Johnson finally terminated Petersen, it claims only the new severance plan covered his discharge, not the old, superseded Program. E.F. Johnson offered to pay Petersen benefits under the new plan, but Petersen refused. Petersen argues that his right to severance benefits vested upon his layoff in March 2001, under the Program, not the new plan.

The Program stipulates that employees participating in the Program "will be provided with one month salary severance benefit, for each full year of service with a minimum of three months and a maximum of six months, for termination without cause or termination without cause as a result of a change of control." (Deft. Ex. 3 at 4.) The Program does not define the phrase "termination without cause." Previously, the Court held that: (1) E.F. Johnson laid off Petersen on March 9, 2001, and did not permanently terminate his employment until six months later; (2) the Program contained ambiguous language as a matter of law; and (3) the record contains evidence that creates an issue of material fact on the meaning of the Program's ambiguous terms. The parties proceeded to trial on the third

issue. Thus, at trial, Petersen had the burden to prove beyond a preponderance of the evidence that the Program language included his employment status.

**DISCUSSION**

**A. Intent of the Parties**

To resolve ambiguities in ERISA plans, courts look outside the four corners of the plan. Stearns v. NCR Corp., 297 F.3d 706, 710, 712 (8th Cir. 2002) (noting that "basic principles of contract interpretation are often relevant in construing an ERISA plan," and if a provision is ambiguous, the court may look at extrinsic evidence to determine the parties' intent); Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 657 (8th Cir. 1992). At trial, both sides presented evidence about the meaning of the term "termination" in the Program's provisions. Petersen argues that the Court should resolve the Program's ambiguity by turning to the definition of "layoff" in an employee handbook given to Petersen when he began employment at E.F. Johnson. This definition makes no distinction between the terms "layoff" and "discharge" or "termination." This evidence, Petersen argues, shows his belief that the Program covered layoffs as well as terminations. In response, E.F. Johnson introduced evidence to show that it not only intended to rehire Petersen, were the economy to improve, but also that it communicated this to him. Therefore, E.F. Johnson reasons that neither party intended the language in the Program to include employees who were only temporarily on leave, subject to the performance of the economy.

The Court agrees with E.F. Johnson. On the day that Petersen was laid off, conversations that he had with his immediate supervisor, Mr. Safavi, and with the Vice

President of Human Resources, Nancy Morrison, indicate that Petersen knew that his layoff did not sever the employment relationship between himself and E.F. Johnson. Instead, Ms. Morrison made it clear to him that he was subject to recall and that he retained his accrued vacation time and seniority. On one hand, Petersen testified to the uniqueness of his situation, stating that no other executive faced a temporary layoff, as he did. He also submitted evidence, in the form of internet news articles, suggesting that E.F. Johnson intended the layoffs to be permanent and did not intend to rehire any of the employees that it placed on temporary layoff status. On the other hand, however, during cross-examination Petersen admitted that even at the time of his layoff, he knew that a difference existed between layoff and termination. He also knew that his status was not terminated, but instead laid off. Petersen did not demonstrate that the parties intended the language in the Program to cover his employment status. Therefore, he failed to carry his burden of proof in this case.

**B. Eligibility for Coverage under the New Plan**

On April 2, 2001, E.F. Johnson adopted a new severance package, the "Transcrypt Directors Severance Plan" (the "Plan"), which superseded the previous Program. At the time E.F. Johnson eventually terminated Petersen's employment, he was eligible for benefits under the Plan. Even though Petersen undisputedly qualified for severance benefits under the new Plan, E.F. Johnson required that he waive any rights to the old Program. Because Petersen refused to waive these benefits, E.F. Johnson argues that he is ineligible to collect proceeds now. E.F. Johnson's requirement that Petersen sign a release form, waiving his rights to the old Program forced Petersen into a Hobson's choice: either accept the drastically

reduced severance package in the new Plan or pursue this legal action in a good faith attempt to enforce his perceived entitlements under the old Program and risk losing his severance benefits altogether. Whether or not a calculated move by E.F. Johnson, the risk of losing his severance rights under both plans might have coerced a less resolute plaintiff into acquiescence. To find, as E.F. Johnson now requests, that Petersen intentionally waived coverage under the new Plan through pursuing a claim under the superceded Program offends the Court's sense of equity and undermines the interests of justice. Therefore, Petersen remains eligible for severance benefits under the new Plan.

**CONCLUSION**

Plaintiff failed to prove that the parties intended the language in the Program to cover his employment status. Plaintiff remains eligible for severance benefits under the new Plan, however. Accordingly, **IT IS HEREBY ORDERED** that:

1. Judgment be entered in favor of Defendant concerning the meaning of the superseded Program's language; and

2. Judgment be entered in favor of Plaintiff concerning his eligibility under the new Plan.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 26, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed <u>retroactively</u>, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.